I guess I agree with the Federal Court's starting point that the real issue in this case is not so much whether Orisa saw the tattoo, but whether his identification of my client was tainted by seeing the tattoo. And I guess I submit that it's synonymous. There's no way he could have seen the tattoo and not had his identification tainted. The State Court's findings in this regard are hardly worthy, either under the EDEFA standard of deference, because the State Court cites no Federal law for which we can defer to their application. Well, it doesn't have to. We've been told by the Supreme Court they don't even have to know the Federal government exists. And they also got the facts wrong. So the magistrate notices that the court erred in concluding that Orisa didn't see the tattoo. But then he goes on and says that, well, perhaps that's not really enough, that we really have to show a little bit more, and we haven't shown the last part by clear and convincing evidence. But we don't really know what the State Court would have decided had they read the record, because the record was pretty adequately developed at the State level that Orisa did see the tattoo. I have a hard time arguing this case, because I've lived in Highland Park for 13 years. Everybody knows who the Avenues are. It's incomprehensible to me that if me, a middle-aged white woman, knew that a young Latino man would know who the Avenues were. But counsel develops it to some extent through the apartment manager, that all the people that hung out in front were Avenues, and that they all had tattoos. And Orisa was a person who was not around there playing cards with his dad prior to this event. I think counsel may have developed it a little bit better at the preliminary hearing. It was developed better, which was before the State Court preliminary hearing. Orisa testifies, no, I'm not an Avenue. Yes, I saw all Avenues outside when we came back. The people outside were Avenues. And he goes on to say, you know, that Sean and he were not Avenues. But be that as it may, I think counsel adequately developed a sufficient record from which we can infer a reasonable interpretation of the record that the tattoo influenced his identification. This is largely, you know, besides the fact that he was looking for an Avenue, which would be my position, prior to going to the lineup, he looked at two photo spreads. The first one, he identified the wrong person, and then later admitted he deliberately lied. And then the second time, my client's picture was in both of the photo spreads. In the second photo spread, he doesn't identify my client. And the only time he does identify him is when he sees the Avenue's tattoo. So, unless the Court has questions, that's really all I have to say on it at this point. All right. I'd like to give you some time for rebuttal, though. Give you some rebuttal time. Good morning, Your Honors. Mark Turchin, Supervising Deputy Attorney General, appearing for Respondent Joe McGrath. It's Respondent's position that deference should be accorded to the State court's rejection of the I.D. claim on the basis of the fact that it constituted neither an unreasonable determination of the factual of the facts, nor did it constitute an unreasonable legal application. What part of it was not unreasonable? Well, the State court found that there was no evidence that Ariza saw the tattoo, read it, or knew its significance. And we submit that the State court was referring to the time of the offense. There was absolutely no evidence that the victim, Ariza, saw any tattoo on either one of the suspects. In fact, he described the younger Did you take issue with the magistrate's view that the State court was confused about the facts? As we indicated in the brief, the magistrate judge's second report and recommendation to the effect that the State court opinion in that area was arguably incorrect, was unwarranted a reasonable reading of the State court opinion and be made for the fact that when the State court opinion refers to the fact that there is no evidence that Ariza saw the tattoo, read it, or knew its significance, that the State court is referring to the time of the offenses. The crime occurred at night, as I understand it? That's correct.  There was some testimony with respect to that. And there was also testimony that the younger suspect was wearing a jacket and pants. And so, as it came out at the live lineup, the tattoo was on the arm, I believe. So there's really no way that, based upon this record, very little way that one could conclude that the eyewitness saw the tattoo at the time of the offenses. And there's no evidence that Ariza described either the suspect as having a tattoo or being in a gang. And there's no clear evidence that Ariza knew the significance of the tattoo that he saw at the lineup. I mean, we could speculate, but the bottom line is there's no evidence to that effect. And most importantly, and as the State court found, there was no evidence of gang affiliation as a motive for the crimes in this case. So, in short, there was really no evidence that Ariza's lineup identification was based on the tattoo. All we have is the fact that the eyewitness testified at one point in his testimony that, yes, he saw an Avenues gang tattoo on the petitioner at the live lineup. But that does not a record make of a suggestive lineup identification. But even assuming that that would be the case, we know that reliability is the linchpin in determining a disability. And it's Respondent's position that under the factors enunciated in Neal v. Biggers and other Supreme Court cases, the reliability of that lineup identification is apparent. I believe we went through those factors in our brief, but very quickly, opportunity to view. The eyewitness, Mr. Ariza, saw two men, an older and a younger. He provided a detailed description of both suspects, both the older fellow and the younger fellow, including the clothing that the younger fellow was wearing, the ethnicity, the approximate age, height, weight, hair and eye color, and the fact that he had facial hair. So he certainly had a reason to pay attention. He was being held up at gunpoint. The description was accurate. We can only assume because there was no claim made that Petitioner did not possess the physical characteristics that were provided by the eyewitness. And the eyewitness was certain. There's no indication that he was less than certain of his lineup identification and his trial identification. I think if you had to boil it down, the one factual mistake that the State Court of Appeal made with respect to the lineup was the fact that they concluded the lineup occurred three weeks after the offense, when, in fact, it was seven weeks. But that's a distinction or an immaterial factual mistake. Unless there are any questions on that issue or any of the other issues, we would submit on the brief we've filed. Does the Court have any additional questions? No. Thank you, Counsel. I personally think that a reason for all of the factors, to consider whether the ID was reliable, the person he identified looked like it. That's not the issue. The issue is whether or not the fact finders made an unreasonable determination of the facts under AEDPA to which we must give, as we have been quite strongly reminded recently by the Supreme Court, substantial deference. So you're concerned, then, Your Honor, not with whether the second part, which I was going to, as to whether the ID was inherently reliable, but with the fact that whether the courts made a factual finding that was necessary. That is essentially a finding on us absent. Okay. Then I'll address what Counsel said, that he thought that the Respondent's position as set forth in his reply brief was that perhaps when the Court made this one-paragraph statement about Arisa's identification of seeing the tattoo, he was really referring to the crime scene as opposed to the lineup. And I just think that that's absurd. It's so clear what the Court is talking about in that sentence. There was no mention of the tattoo in the eyewitness's description of the attackers? There was no mention of the tattoo. He described an average – the guy that he described looked like everybody else on the street. And there's no dispute with regard to the fact that the robber was wearing a coat or something? Dark clothing. Dark clothing. Probably they all were wearing dark clothing. Given that fact, then doesn't that lessen the significance of the gang tattoo that was clearly seen at the lineup? I don't think so, not because you have a man that sees the picture of this person twice in a lineup, at that photo lineup, and he doesn't identify him. I thought your argument was that the viewing of a gang tattoo on his upper arm somehow influenced the identification at the lineup. Yes, because in the previous two times when he saw a picture of him, he didn't see any tattoo. He didn't identify him. So I'm still trying to understand how that could taint the identification. There's absolutely no mention of it until he actually sees this individual. Because he knew he was looking for a gang member, even if we can assume that he didn't know it was Avenue territory, which is absurd. He knew he was looking for a gang member. He said there were cholos hanging outside and that this was obviously perpetrated by a cholo, quote-unquote, gang member. And he sees a fellow there with a gang tattoo, even if he doesn't know what gang. Let's just assume he doesn't. He still sees the gang tattoo. I mean, he lives in a gang area. He knows a gang tattoo, and he sees one. So I think the gang tattoo iced it for him, you know. I mean, if he had shown, if before he had identified the person in a picture ID or something without seeing the tattoo, I wouldn't be here making this argument. And I don't think that the court even, the court thought that he didn't see the tattoo. In applying, then going to the second problem, applying the potential for irreparable misidentification, what do we do with the fact that the physical description and all the other details provided immediately after the offense matches your client and his father? I mean, those are all factors that the court must take into account. Determining the reliability of the identification, aren't they? Yes. I don't think it's a problem with the father. I mean, the fact that the father was there and the father did it, it doesn't mean, and there was a lot of other young men around too. And the clothing description or physical description matches your client. They're in the ballpark. From the record I have, they appear to be in the ballpark. But as far as being particularized, they aren't. I mean, the height and the fact that he was Latino, I mean, it doesn't help us. I mean, they were all Latino. The question that I'm asking you to look at in deciding whether there's anything here that we need to defer to is that the court of appeal was wrong. They didn't identify, they didn't focus on the fact that he looked at that tattoo. And also, another point that counsel made that I wanted to counteract, it's not as if he came into court and said, yes, I'm absolutely, perfectly sure that's the guy. He was all over the place. He recanted several times, even during the trial. Only when the DA finally pinned him down and finally got him to say yes, and then he recanted again. He just went. I have a hard time stopping, because we have so many of these cases in a week that the facts start to spill over. Was this the case where there was some suggestion that he had been threatened? No. Well, yes. That he was afraid. He was afraid. All throughout the whole case, there's all this, I'm afraid, I've been afraid, I was afraid. The first time, I'm still, well, I'm not really afraid now. So there was this undercurrent of gang fear. And I guess he had disappeared for some period of time. He disappeared, yes. He was caught. Three continuances. Right. And there was a preliminary hearing at which he had originally testified. I don't, you know, frankly, and I do apologize, I know the district court has it, but I don't know that this court has it, because it wasn't in the ECRS, but it is with the district court, where he testifies at the prelim that the cholo was hanging outside of Avenue's gang members. And that's at page 92 of the clerk's transcript on appeal, which the court would have wished to get it from the district court, or we could send up a supplemental. He specifically asked about the Avenues. Are they familiar enough with the area to know that the gang members that hang out in that area belong to Avenues? And he says yes. Anything further that I could? No, thank you, counsel. Thank you both. Okay, so this argument is ordered and submitted.
judges: Trott, Tallman, Collins